```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
```

Linda Barron, Individually
and as Executrix of the Estates
of Leo and Anna Barron

    v.                                        Case No. 22-cv-318-SE
                                                    Opinion No. 2023 DNH 013

Benchmark Senior Living, LLC


O R D E R

Linda Barron brought claims in state court as the executrix of her parents' estates following their deaths due to COVID-19 at Greystone Farm at Salem, which was operated by defendant Benchmark Senior Living, LLC.[1] Benchmark removed the case to this court and now moves to dismiss Barron's claims, arguing that the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d, et. seq., preempts or provides Benchmark with immunity from liability for Barron's claims. Doc. no. 4. Benchmark argues in the alternative that New Hampshire Revised Statute Annotated ("RSA") 21-P:42a provides it with immunity from liability for Barron's claims. Barron objects and moves to

---

[1] The caption of Barron's complaint states that she brings her claims individually and as the executrix of her parents' estate. The nature of her claims and the allegations in the complaint, however, do not appear to support any claims on Barron's own behalf. Because neither party addresses the issue and it is not material to this order, the court does not address it again herein.

remand the case to state court for lack of subject matter jurisdiction. Doc. no. 8. For the following reasons, the court denies both motions.

## Background

Leo and Anna Barron, who were husband and wife, were admitted to Greystone Farm, an assisted living facility in Salem, New Hampshire, in 2018. They were residents of Greystone Farm in 2020 when the COVID-19 pandemic caused a public health emergency in New Hampshire and across the nation. In response to the pandemic, the Centers for Disease Control and Prevention ("CDC") issued protocols to long-term care facilities, including Greystone Farm, requiring them to institute several practices to protect their residents from COVID-19. These practices included the use of personal protective equipment and specific disinfecting procedures and location requirements for the administration of aerosol-generating devices. In March 2020, Benchmark began issuing email bulletins to Greystone Farm residents and their families, assuring them that all providers at Greystone Farm were following the CDC's protocols.

The complaint alleges that despite these representations, Greystone Farm staff failed to follow the CDC's protocols. For example, according to the complaint, the care attendants and

clinical staff at Greystone Farm who cared for the Barrons did not use personal protective equipment during their interaction with them. Staff also allegedly failed to disinfect Mr. Barron's nebulizer machine, removed the machine from his room, and administered his treatments in community areas in the facility contrary to the CDC protocols. They also allegedly allowed the Barrons and other residents to be in community areas without masks or other protective equipment and did not enforce or encourage social distancing protocols. In addition, Greystone Farm allegedly neglected to screen staff or vendors for COVID-19 when they entered the facility and did not adhere to social distancing protocols.[2]

Both of the Barrons contracted COVID-19 at the facility. Leo Barron died on May 29, 2020, and Anna Barron died on May 31, 2020. According to their death certificates, both of their deaths were caused by pneumonia as a consequence of a COVID-19 infection.

As executrix of her parents' estates, Linda Barron brought suit in New Hampshire state court, alleging three claims against Benchmark: wrongful death (Count I); a violation of the New Hampshire Patients' Bill of Rights, RSA 151:21 et seq. (Count

---

[2] For ease of reference, the court will refer to Greystone Farm as "Benchmark" for the remainder of this order.

II); and violation of the New Hampshire Consumer Protection Act ("CPA"), RSA 358-A (Count III). Benchmark removed the case to this court, asserting both federal-question and diversity jurisdiction, and further that the federal officer removal statute, 28 U.S.C. § 1442, provides a basis for this court's jurisdiction.

## Discussion

Barron moves to remand the case for lack of subject matter jurisdiction on the ground that her claims are not completely preempted by the PREP Act, which was the stated ground for federal question jurisdiction in the notice of removal,[3] and that federal officer removal does not apply in this case. Benchmark moves to dismiss Barron's claims on the ground that the PREP Act defensively preempts the claims and that, even if not, Benchmark is immune from liability for her claims under the Act and New

---

[3] Complete preemption creates a right of removal on the basis of federal question jurisdiction even when a plaintiff alleges only state law claims if "federal statutory language demonstrates that Congress has manifested a clear intent that claims not only be preempted under the federal law, but also that they be removable." Palkow v. CSX Transp., Inc., 431 F.3d 543, 553 (6th Cir. 2005). As discussed further below, Benchmark argues in its motion to dismiss that the court should dismiss Barron's claims on the grounds of "defensive" preemption. The two preemption doctrines are distinct, and the court notes the difference here for clarity.

4

Hampshire law. Because the motion to remand raises a question as to this court's jurisdiction, the court addresses that motion first.

I. Motion to Remand

Barron's motion challenges Benchmark's removal on the basis of federal question jurisdiction and the federal officer removal statute. Benchmark, however, also asserted subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. See doc. no. 1 at 3. Barron did not challenge that basis for removal, either in her motion or in response to Benchmark's objection.

Diversity jurisdiction exists under § 1332 when "the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties." Home Depot U.S.A., Inc. v. Jackson, 139 S. Ct. 1743, 1746 (2019). When, as here, the defendant is a limited liability company, it is a citizen of every state where its members are citizens. Disaster Solutions, LLC v. City of Santa Isabel, P.R., 21 F.4th 1, 5 (1st Cir. 2021). The jurisdictional amount alleged in the complaint is ordinarily the amount in controversy for the purposes of removal. 28 U.S.C. § 1446(c)(2). But if, as in this case, the complaint does not claim a specific amount of damages due to

5

state practice, removal based on the amount asserted in the notice of removal is proper when the plaintiff does not contest the defendant's assertion and the court does not question it. Dart Cherokee Basin Operation Co., LLC v. Owens, 574 U.S. 81, 87-88 (2014); see 28 U.S.C. § 1446(c)(2)(A)(ii).

Based on the allegations in the complaint, Linda Barron is a citizen of New Hampshire, as were both of her parents. In its notice of removal, Benchmark asserts that it is a citizen of Massachusetts because all of its members are citizens of Massachusetts. Consistent with New Hampshire practice, Barron does not specify in her complaint the precise amount of a money sought. Benchmark, however, asserts in the notice of removal that the damages in the case, if proven, will exceed $75,000. Barron does not dispute these jurisdictional facts and the court does not question them.

Based on the above, Benchmark has shown that the court has subject matter jurisdiction based on diversity of citizenship. Therefore, the court denies Barron's motion to remand.

## II. Motion to Dismiss

Benchmark moves to dismiss Barron's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that it is entitled to immunity under the PREP Act, 42 U.S.C. § 247d-

6

6d(a)(1), that Barron's claims are preempted by the PREP Act, id. at (b)(8), and that Benchmark is immune from Barron's claims under New Hampshire law, RSA 21-P:42a. When considering a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations in the complaint as true and draws reasonable inferences in the plaintiff's favor. Cheng v. Neumann, 51 F.4th 438, 443 (1st Cir. 2022).

A. PREP Act

Congress enacted the PREP Act in 2005 in response to the Severe Acute Respiratory Syndrome (SARS) outbreak of 2003. Krol v. Cottages at Garden Grove, No. 21-CV-1038 (NAM/ATB), 2022 WL 3585766, at *4 (N.D.N.Y. Aug. 22, 2022). Its purpose was to "encourage the expeditious development and deployment of medical countermeasures during a public health emergency by allowing the HHS [Health and Human Services] Secretary to limit legal liability for losses relating to the administration of medical countermeasures such as diagnostics, treatments, and vaccines." Cannon v. Watermark Retirement Communities, Inc., 45 F.4th 137, 139 (D.C. Cir. 2022) (quotation omitted). "The Act provides 'covered persons' with 'immunity from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to or resulting from the

7

administration to or the use by an individual of a covered countermeasure if a declaration' by the Secretary under the PREP Act 'has been issued with respect to such countermeasure.'" Id. (quoting § 247d-6d(a)(1)). A covered person includes a "qualified person who prescribed, administered, or dispensed such countermeasure . . . ." § 247d-6d(i)(2)(B).

PREP Act immunity does not leave potential claimants without recourse for claims relating to the use of covered countermeasures. As an alternative remedy when immunity applies, the Act established the Covered Countermeasure Process Fund. § 247d-6e(a). For such claims, the Secretary of HHS has the sole authority to administer and provide compensation from that Fund, and the Act specifies the procedure for compensation. Id. at (b)(1). In addition, the PREP Act provides an exception to the immunity when death or serious injury is caused by willful misconduct. § 247d-6d(d)(1). But, plaintiffs asserting claims alleging willful misconduct must file an action in the United States District Court for the District of Columbia. § 247d-6d(e)(1).

    1. <u>COVID-19</u>

In March 2020, the Secretary of HHS issued a declaration under the PREP Act (the "COVID-19 Declaration") that triggered

"'immunity for activities related to medical countermeasures against COVID-19.'" Saldana v. Glenhaven Health Care LLC, 27 F.4th 679, 687 (9th Cir. 2022) (quoting Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 2020 WL 1245193 (Mar. 17, 2020)). The COVID-19 Declaration defined covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." 85 Fed. Reg. 15198, 15202. Consistent with the PREP Act's language, the COVID-19 Declaration stated that immunity applies to covered persons "with respect to administration or use of a Covered Countermeasure." Id. at 15199. To date, there have been 10 amendments to the original Declaration, each of which expands or clarifies its scope. Trio v. Turing Video, Inc., No. 1:21-cv-04409, 2022 WL 4466050, at *10, n.4 (N.D. Ill. Sept. 26, 2022). In addition, the HHS's Office of General Counsel ("OGC") has issued Advisory Opinions related to the Declaration. Carroll v. Comprehensive Healthcare Mgmt. Servs., LLC, No. CV 22-686, 2022 WL 17156776, at *7 (W.D. Pa. Aug. 16, 2022), report and

recommendation adopted, No. 2:22CV686, 2022 WL 17105481 (W.D. Pa. Nov. 22, 2022).

### 2. Immunity Under the PREP Act

As stated above, the PREP Act provides "covered persons" with immunity from suit and from liability for claims brought under state and federal law for "loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." § 247d-6d(a)(1); see also § 247d-6d(a)(2)(B). Benchmark argues that it is immune under the Act from liability for each of Barron's claims.

Barron does not dispute for the purposes of the instant motion that Benchmark is considered a "covered person" under the PREP Act. She argues that Benchmark is not immune from liability for her claims under the Act, however, because her claims were not caused by and do not relate to "the administration to or the use by an individual of a covered countermeasure." She argues that, to the contrary, her complaint alleges that Benchmark negligently failed to use covered countermeasures, and that such inaction does not fall within the PREP Act's purview.

The issue presented here — whether a plaintiff's allegations of a nursing home's or assisted living facility's failure to use covered countermeasures in response to COVID-19 trigger the PREP

Act's immunity provision — is not one of first impression. Courts that have considered the issue have overwhelmingly held that the PREP Act does not provide a defendant with immunity from liability for claims like Barron's. See Coleman v. Intensive Speciality Hosp., LLC, No. CV 21-0370, 2022 WL 17779323, at *7 (W.D. La. Dec. 19, 2022) (denying the defendant's motion to dismiss based on immunity under the PREP Act because the complaint alleged negligence in failing to follow COVID-19 protocols, "not an improper use of a countermeasure, nor a decision to provide the countermeasure to other patients instead of" the plaintiff); Testa v. Broomall Operating Co., L.P., No. CV 21-5148-KSM, 2022 WL 3563616, at *5 (E.D. Pa. Aug. 18, 2022) ("Although the PREP Act immunizes individuals who used covered countermeasures, it does not shield covered individuals who failed to use covered countermeasures."); Walsh v. SSC Westchester Operating Co. LLC, 592 F. Supp. 3d 737, 744 (N.D. Ill. 2022) (denying the defendant's motion for judgment on the pleadings on immunity grounds because the PREP Act "is designed to protect those who employ countermeasures, not those who decline to employ them" (quotations omitted)); Hatcher v. HCP Prairie Vill. KS OPCO LLC, 515 F. Supp. 3d 1152, 1160 (D. Kan. 2021), appeal dismissed, No. 21-7017, 2021 WL 4768299 (D.C. Cir. Sept. 28, 2021) (denying the defendant's motion to dismiss on

11

PREP Act immunity grounds where the plaintiff alleged, among other things, that the defendant "facility failed to adequately clean and disinfect common areas" and "that safety protocols were not carried out"); Ruiz v. ConAgra Foods Packaged Foods, LLC, No. 21-CV-387-SCD, 2021 WL 3056275, at *4 (E.D. Wis. July 20, 2021) ("Here, because the amended complaint alleges that Ruiz contracted COVID-19 because of ConAgra's failure to implement adequate countermeasures, the PREP Act's immunity provision does not apply.").

    Benchmark argues that this interpretation of the PREP Act contradicts the HHS's directives. It notes that in the Fourth Amendment to the COVID-19 Declaration, the HHS Secretary "[m]akes explicit . . . that there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections." Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 FR 79190-01. Benchmark also asserts that the HHS OGC's Fifth Advisory Opinion, which the Secretary incorporates into the Fourth Amendment, "further confirms that the PREP Act indeed applies to suits concerning the non-use of covered countermeasures against COVID-19." Doc. no. 5 at 10

(citing Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision (January 8, 2021) ("Fifth Advisory Opinion")).

Benchmark is correct that both the Fourth Amendment and Fifth Advisory Opinion show that "an inaction claim is not necessarily beyond the scope of the PREP Act." Ruiz, 2022 WL 3056275, at *4 (quotation omitted). But it is equally clear that the Act does not cover all inaction claims. "The language of the PREP Act itself supports a distinction between allocation which results in non-use by some individuals, on the one hand, and nonfeasance, on the other hand, that also results in non-use." Fifth Advisory Opinion, p. 4, available at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf. Thus, "inaction or failure-to-administer resulting from prioritization falls within the scope of the PREP Act. However, as the Advisory Opinion clarifies, the PREP Act's coverage does not extend to inaction or failure-to-administer resulting from of non-feasance." Mann v. Arbor Terrace at Cascade, LLC, No. 1:20-CV-02325-SCJ, 2021 WL 9763357, at *4 (N.D. Ga. Apr. 13, 2021); see Walsh, 592 F. Supp. 3d at 744 (noting that the PREP Act "distinguish[es] between misfeasance and nonfeasance" because the Act "is designed to

protect those who employ countermeasures, not those who decline to employ them").

Here, Barron's complaint does not allege that her parents contracted COVID-19 due to Benchmark's prioritization or allocation of covered countermeasures to other residents. Rather, Barron alleges that Benchmark failed to act in accordance with the standard of care, and that this failure led to her parents' illness and death. The PREP Act does not provide Benchmark with immunity from liability for those claims.[4] See, e.g., Ruiz, 2021 WL 3056275, at *5.

### 3. Defensive Preemption

In the alternative, Benchmark argues that the court should dismiss each of Barron's claims "due to express statutory defensive preemption under subsection (b)(8) of the PREP Act." Doc. no. 5 at 21. Defensive or "ordinary" preemption "is an affirmative defense that exists where federal law explicitly or implicitly displaces state law within a given scope; it can

---

[4] The court notes that Benchmark raises the PREP Act immunity defense at the motion to dismiss stage, where the court considers only the allegations in Barron's complaint while resolving all inferences in her favor. The court's ruling as to whether the Act's immunity provisions apply in this case is limited to the standard of review applicable to Benchmark's motion.

14

defeat liability for a state law claim." *Martin v. Petersen Health Operations, LLC*, No. 1:20-CV-1449, 2021 WL 4313604, at *6 (C.D. Ill. Sept. 22, 2021), aff'd, 37 F.4th 1210 (7th Cir. 2022). Preemption is express "when Congress has 'unmistakably . . . ordained' that its enactments alone are to regulate a subject, and state laws regulating that subject must fall." *Massachusetts Ass'n of Health Maint. Organizations v. Ruthardt*, 194 F.3d 176, 179 (1st Cir. 1999) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (alterations and further quotation omitted)).

Section (b)(8) of the PREP Act, on which Benchmark relies, is titled "Preemption of State Law." It provides that, during the period where the Secretary of HHS issues a declaration,

> no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other

15

>  provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

§ 247d-6d(b)(8).

Benchmark contends that this provision of the PREP Act precludes Barron from pursuing her New Hampshire state law claims for wrongful death, violation of the Patients' Bill of Rights, and violation of the CPA. Specifically, Benchmark argues that these claims impose legal requirements that are different from or in conflict with the PREP Act requirements and relate to the "use . . . or administration by qualified persons of the covered countermeasures." Doc. no. 5 at 22 (quoting § 247d-6D(b)(8)). It is wrong.

Section (b)(8) of the PREP Act "restricts any state from passing a law that conflicts with the federal government's requirements" as provided in the Act. Est. of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d 518, 530-31 (D.N.J. 2020), aff'd sub nom. Maglioli v. All. HC Holdings LLC, 16 F.4th 393 (3d Cir. 2021). "This language indicates not that any and all state claims related to COVID-19 are preempted, but only those that conflict with or differ from the PREP Act are preempted." Khalek v. S. Denver Rehab., LLC, 543 F. Supp. 3d 1019, 1026 (D. Colo. 2021).

Benchmark's defensive preemption argument is a red herring; a rehash of its claim for immunity dressed in different clothes.

16

Section (b)(8) of "the PREP Act clearly preempts incompatible state laws." Martin, 2021 WL 4313604, at *6. But Benchmark identifies no such New Hampshire law. It does not demonstrate how the standard of care underpinning Barron's claims is incompatible with the requirements under the PREP Act. Rather, its argument in favor of defensive preemption is based on the same mistaken belief that undermines its argument in favor of immunity — that Barron's claims relate to Benchmark's administration and use of covered countermeasures in response to the COVID-19 pandemic. For the reasons outlined above, Barron's claims do not rely on those allegations and so that argument fails. So too does Benchmark's preemption defense.[5]

B. State Statutory Immunity

Benchmark also contends that it is entitled to immunity from liability for Barron's state law claims based on RSA 21-P:42-a. That statute provides that facilities like Benchmark "are deemed to have been engaged in preparing for and/or

---

[5] Benchmark also briefly argues that the court should dismiss Barron's claims because she failed to exhaust her administrative remedies under the PREP Act because she did not file a claim under the Covered Countermeasure Process Fund. § 247d-6e(b)(1). Because Benchmark is not entitled to immunity under the PREP Act, the administrative requirements for making a claim under the compensation fund do not apply in this case.

17

carrying out 'emergency management' functions for the purposes of RSA 21-P:35 when complying, or reasonably attempting to comply, with any executive order, agency order or rule." Those facilities shall not be "liable for the death of or injury to persons . . . as a result of such compliance or reasonable attempts to comply with such an emergency order or rule under this section." Id.

Benchmark points to Executive Order 2020-04, in which Governor Sununu declared a state of emergency due to COVID-19 in March 2020. It also cites several guidelines that the Division of Public Health and the CDC issued to care facilities and employers relating to efforts to stop the spread of COVID-19.

Benchmark contends that it is immune from Barron's claims under RSA 21-P:42-a because the allegations in the complaint are based on the Benchmark's compliance with or attempts to comply with emergency orders or rules relating to efforts to stop the spread of COVID-19. As explained above, however, Barron's claims are based on allegations that Benchmark did not comply or attempt to comply with those orders and rules. Therefore, Benchmark has not shown that it is entitled to immunity under RSA 21-P:42-a.

Conclusion

For the foregoing reasons, Barron's motion to remand (document no. 8) and Benchmark's motion to dismiss (document no. 4) are denied.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

February 6, 2022

cc: Counsel of record.